WOODEN *v.* WESTERN NEW YORK & P. R. CO.

*(Superior Court of Buffalo, General Term.* May 4, 1892.)

1. FELLOW SERVANTS—CONDUCTOR AND BRAKEMAN—VICE PRINCIPAL.

Where the determination of the sufficiency of appliances for holding defendant's railroad train in descending a grade was left to its conductor, the decision of the conductor was the decision of defendant; and defendant was liable for the death of a brakeman on the train, caused by the insufficiency of the appliances used.

2. SAME—RULES OF RAILROAD COMPANY.

A brakeman who has been in the employ of a railroad only three months cannot be held to have had knowledge of a standing order in regard to the management of the train, and therefore to have, by continuing in the employment, assumed the risks attendant thereon; it appearing only that the order, which was not in the book of rules, had been posted some time before, and it not being shown whether it had been torn down or was still up during his employment.

16 N. Y. Supp. 840, affirmed, by divided court.

Motion by defendant for reargument of plaintiff's motion for new trial. Motion denied by a divided court.

For opinion on granting new trial, see 16 N. Y. Supp. 840.

Argued before HATCH and WHITE, JJ.

*John G. Milburn,* for the motion.    *Harlow C. Curtiss,* opposed.

HATCH, J.   I am not prepared to give assent to the conclusion reached by my associate upon this motion, that the court, in sustaining the plaintiff's exceptions, assumed a rule of law in conflict with established authority regulating the relation and liability between master and servant, and of servants to each other.   On the contrary, I think the rule of law announced by Judge BECKWITH in deciding this case, as applicable to the facts disclosed by the record in relation to those questions, expresses the correct rule of law.   It is much more difficult to find evidence connecting the cause of the accident with the negligence of the defendant; however, the conclusion is reached that this may be done.   It appears from every witness who spoke upon the subject that upon this night there was a heavy frost; that this produced a bad, slippery rail; that it was much more difficult to set brakes under such conditions than if the rail had been dry, by reason of which the holding power of the brake was perceptibly reduced.   It is also in evidence that oil was found upon the brake shoes, which would materially lessen the friction and grip of the brake.   A greased brake shoe, it is not strained to say, constitutes a defect in the brake; for there can be no difference between a brake shoe rendered wholly or partially useless by grease, and one which, from a defective chain or other cause, prevents its coming firmly against the wheel. The object sought is to create friction, and resist the motion of the wheel, and whatever lessens its power in this respect, to the extent it is lessened, creates a defect.   An examination of the cars not broken up, made after the accident, showed the brakes upon them set.   The conductor had given to the brakemen all necessary instructions, and saw that they were properly carried out; for he states that he knew the brakes were set, as they left the top of the grade, "by the way the train tipped over the hill," and also from seeing the lights moving upon the cars when he found the train was running too fast, and went upon the top to make an observation and set the brakes.   From this testimony the jury would have the right to draw the inference that the brakemen were promptly and properly performing the duties devolving upon them, so far as in their power.

It is further insisted that the court overlooked the question that deceased, by continuing in defendant's employ with knowledge of defendant's method of operating its trains over Keating mountain, as provided by its rules and orders, assumed the risks attendant thereon.   If the greased brakes are to be considered as a defect in the brake,—and I think they may be,—it is quite

clear, as to that, he took no risk; and defendant could be held liable in not complying with the rule which requires the furnishing of reasonably safe and proper appliances, if such defect be connected with the cause of the accident. But it is not clear that defendant's claim can be upheld, as matter of fact. The conductor was the sole judge as to whether the train, under the circumstances, could be safely taken down the mountain. The order to leave the cars came to the conductor personally. Such order was not posted upon the bulletin boards, but the standing order with respect to operating the trains over Keating mountain was; but whether it was posted there during Wooden's employment the record does not disclose, or whether it was in fact ever brought to his attention does not appear. What does appear is this: That standing orders not appearing in the book of rules the men find on the bulletin boards. That the rule in question had been posted upon the bulletin board for a long time. The conductor did not remember when he last saw it, but knew of its existence; did not know if it was on the blackboard at the time of the accident; that they are sometimes torn down, and, for all he knew, this may have been. Deceased had only been in the employ of the road for $3\frac{1}{2}$ months, and a fair inference from the conductor's testimony is that the rule was posted a long time before. Whether it was there when deceased entered his employment, or whether it had then been torn down, does not appear. I therefore think that it may not be taken as a conclusive fact that deceased had notice and knew of the rule regulating the management of trains down Keating mountain. The law requires, not only that the rule be formulated and adopted, but that it be promulgated. *Corcoran* v. *Railroad Co.*, 126 N. Y. 673, 27 N. E. Rep. 1022. Promulgation is to make known. It means that such rule shall be brought to the attention of the servants affected thereby, or that it be given such publicity as that the servant, in the proper discharge of his duties, is bound to take notice of it. when knowledge is presumed. If the rule was not upon the bulletin board when deceased entered the employment, then as to him there was no promulgation, and he was not bound to take notice of it; and search is vain to show that he received information from any other source, or from that. Whether this was a proper promulgation of the rule, as to deceased, I think was a question for the jury.

Upon all the facts of the case the conclusion is reached that the jury would have been authorized in finding negligence upon the part of the defendant in attempting to take the train down the mountain under the existing circumstances and conditions; that thereby control was lost of the train by reason of the condition of the track, and insufficient and defective brake power producing the accident and injury complained of. These views lead to a denial of the motion for a reargument.

WHITE, J. If the motion for a reargument is to prevail, it must be upon the sole ground that the order of the general term, granting a new trial, is in conflict with a controlling decision upon the question as to the relation which existed between the conductor of the train of cars upon which the deceased lost his life and the deceased, who was at the time a brakeman upon the same train. The theory of the plaintiff upon the trial, and that adopted by the court in ordering a new trial, was that the evidence given would have justified the jury in finding that the injury complained of was caused by the failure of the conductor in charge of the train to select and make use of the proper means and appliances for safely moving the train over Keating mountain. As the record stands, it must be assumed that by dividing the train and moving it in sections, or by enlisting more help in the work of handling it, it might have been taken over with safety. At any rate, there is no evidence that it could not have been. The means and appliances to do the work with safety were supplied by the defendant, but the manner or mode of ad-

justing and using them was left to the discretion of the conductor; and, for the purpose of this motion, (only,) it may be assumed that the proximate cause of the action was the failure of the conductor to properly adjust and use such means and appliances. Under the circumstances, the whole duty of the defendant to the deceased was discharged when it placed proper and sufficient means and appliances for the movement of the train in the hands of the conductor, and vested in him the right to use those means and appliances, in his discretion; and his failure to make a proper use of them was that of a coservant, and not of the master. The trial of the case proceeded, and the order granting a new trial was based, upon the assumption that for the time being the conductor of the train occupied the relation of master to the deceased, and not that of a coservant; in other words, that, in attempting to take the whole train over the mountain at once, instead of dividing it or enlisting more help in handling it, the conductor was discharging a duty imposed by law upon the defendant. The particular business or undertaking in which the conductor and deceased were engaged at the time of the accident was that of moving a train of cars over a mountain. As to all work necessary to be performed in that business, it seems to me to be settled by the controlling decisions of the courts of this state that the conductor and the deceased were coservants. The record shows the train to have been in all respects an ordinary one; that the deceased knew, or was chargeable with knowledge of, the way in which trains were moved over the mountain, and of the fact that the means and appliances to be used were in the discretion of the conductor. The case then, in brief, is one where the master has supplied his servant with sufficient means and appliances for doing the work in hand, but has left the selection of those means and appliances to the judgment and discretion of one of those servants, to the knowledge and with the assent of the others, and one of the latter is injured by the failure of the one vested with such discretion to properly adjust, select, or use the means and appliances furnished by the master. It was the duty of the defendant to provide suitable means for taking the ill-fated train over the mountain, but the selection and use of those means must necessarily be intrusted to its servants in charge of the train. In the nature of things, no general agent could be present to discharge the duty. I think the responsibility for the proper adjustment, selection, and use of those means and appliances was with the conductor of the train, as a coservant with the deceased, and not his master. Such selection, adjustment, and use of those means and appliances were a part of the ordinary and necessary work to be done. The conductor was not more than a superior agent engaged in the same general business with the deceased, and for an error of judgment on the part of such agent, under the circumstances disclosed by the record before us, the master is not liable. The deceased took the risk of the defendant's mode of doing business, in which he lost his life, though a safer one might have been followed, because he knew, or was chargeable with knowledge of, the way in which that business was done. I am of the opinion that a reargument of the case should be allowed on the ground that the order granting a new trial is in conflict with the law holding that the master is not liable to one servant for the injury caused by the negligence of another. *Sherman* v. *Railroad Co.*, 17 N. Y. 158; *Dobbins* v. *Brown*, 119 N. Y. 188, 23 N. E. Rep. 537; *Crispin* v. *Babbitt*, 81 N. Y. 516; *Neubauer* v. *Railroad Co.*, 101 N. Y. 607, 4 N. E. Rep. 125; *Rose* v. *Railroad Co.*, 58 N. Y. 217.