AMERICAN SUGAR REFINING CO. *v.* UNITED STATES (No. 716).[1]

AN ACTUAL FINDING OF TARE DEPARTED FROM.

> The contention here as to tare is limited to the consignment of sugar on one vessel. In this case the collector in reporting tare departed from his own actual finding. A guess or estimate of a proper allowance for tare may not be substituted for a finding arrived at according to the regulations that control.

United States Court of Customs Appeals, March 20, 1912.

APPEAL from Board of United States General Appraisers, Abstract 25792 (T. D. 31675).

[Modified.]

*Curie, Smith & Maxwell* (*W. Wickham Smith* of counsel) for appellants.
*William L. Wemple*, Assistant Attorney-General (*Charles E. McNabb* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This is an appeal from the decision of the Board of General Appraisers refusing relief to the importers on an appeal from the action of the collector fixing the amount of tare on an importation of sugar. The appeal to this court covers three importations, one by the steamship *Hanseat*, No. 478823, one by the steamship *Silvia*, No. 489805, and

---

[1] Reported in T. D. 32352 (22 Treas. Dec., 492).

one by the steamship *Trongate*, No. 489804. Protests were filed in each of these cases but varying somewhat in form. In the case of the steamship *Trongate*, the reasons assigned for the protest were:

1. In order to ascertain the actual tare of the 25,968 packages, the United States weigher made two tares, one of clean bags and one of stained bags. The tare of the clean bags was 2.752 pounds, of the stained bags, 4.203 pounds, and the actual tare was 3.478 pounds. In his report to the collector only the tare of the clean bags was given, on the ground that the stained bags had been saturated by their contents and their weight thereby increased, and the tare of 2.752 pounds was used in the liquidation of the entry.

2. That the method used by the United States weigher in this instance in selecting bags for tare, which method did not include a fair percentage of representative packages, is illegal, and has resulted in erroneous and excessive weights, and the assessment of excessive and illegal duties on this importation.

The protest relating to the cargo of the steamship *Silvia* assigns the following reasons:

1. In determining the tare on the said 20,972 packages of this importation, the United States weigher did not select representative packages, on the ground that many of the bags containing the sugar were more or less saturated with their own contents, and that their weight was thereby increased. Only the clean and lighter bags were taken, resulting in a tare of 2.6735 pounds, which was used in the liquidation of the entry.

2. That the method employed by the United States weigher in this instance in selecting bags for tare, which method did not include a fair percentage of representative packages, is illegal, and has resulted in erroneous and excessive weights and the assessment of excessive and illegal duties on this importation.

The protest relating to the steamship *Hanseat* assigns reasons as follows:

1. In order to determine the tare on the 29,989 packages of this importation, the United States weigher did not select representative packages on the ground that many of the packages were more or less saturated with their own contents, and that their weight was thereby increased. Only the lighter packages were selected for tare. The average tare of these lighter packages was found to be 3.36 pounds. The United States weigher, however, rejected this tare of 3.36 pounds, obtained by his own selection, and substituted for it an estimated tare of 3 pounds per bag, which estimated tare was used in the liquidation of the entry.

2. That the method employed by the United States weigher in this instance in selecting bags for tare, which method did not include a fair percentage of representative packages of the cargo and which substituted an estimated tare for an actual tare, is illegal, and has resulted in erroneous and excessive weights and the assessment of excessive and illegal duties on this importation.

In the brief of counsel in this court the assignments of error relied upon are stated as follows:

1. In finding that the tare allowed on the merchandise in question was fair and in accordance with the evidence.

2. In failing to hold, as matter of law, that the real tare, as ascertained by the United States weigher or as shown by the evidence, should be allowed in the assessment of duty rather than the tare as estimated by said weigher.

3. In failing to hold that the United States weigher proceeded upon a wrong principle in rejecting the tare of 3.36 pounds per bag, as found by him, and substituting for it an estimated tare of 3 pounds per bag.

It is further stated in the brief of counsel that:

A claim was made below that the Government did not make a sufficient and proper examination to ascertain the tare, and that examination made by the importers produced a different result; but I do not think the evidence on this point sufficient, and therefore it will not be pressed. The only point involved in the case is that the appraiser ascertained the tare and then refused to apply it because, in his opinion, it was not just to the Government.

This limitation of the contention of the importer apparently eliminates the claim made under all the protests except the one relating to the importation by the steamship *Hanseat.* Furthermore, the evidence discloses that the only importation here involved in which the collector departed from the tare actually ascertained is No. 478823, covering the cargo of the steamer *Hanseat.* It is true that the evidence discloses that certain other cargoes were considered by the weigher of the port of Boston in connection with that of the steamship *Hanseat,* but none of these are named in the protests here under consideration.

The testimony of the weigher was as follows:

Q. What was your return as to the average?—A. The average was 3.36, but we didn't apply that.

Q. What did you apply?—A. We applied 3 pounds, thinking it was not a fair and just tare with the bags stained and colored, more or less dirt in addition, so we came to the conclusion that 3 pounds tare was a fair average tare to use.

Q. Is that in accordance with the practice which you have done in the taring of sugar of this kind?—A. No, sir; our practice is to use the actual tare, but in this case it didn't seem just.

This testimony presents the single question in the case, that is, as to whether an officer having ascertained by such methods as he chooses to employ the actual tare on an importation, can substitute an estimate in place thereof. We do not overlook the fact that reasons are assigned for this which are more or less plausible. But the question involved is whether this is a compliance with the statute and the Treasury regulations. Section 2898 of the Revised Statutes reads as follows:

In estimating the allowance for tare on all chests, boxes, cases, casks, bags, or other envelope or covering of all articles imported, liable to pay any duty, where the original invoice is produced at the time of making entry thereof, and the tare shall be specified therein, the collector, if he sees fit, or the collector and naval officer, if any, if they see fit, may, with the consent of the consignees, estimate the tare according to such invoice; but in all other cases the real tare shall be allowed, and may be ascertained under such regulations as the Secretary of the Treasury may from time to time prescribe; but in no case shall there be any allowance for draught.

Article 944 of the Customs Regulations of 1908 provides that:

All receptacles for tare are to be thoroughly cleaned by scraping and sweeping whenever the nature of the receptacle is such as to make it practicable.

Article 1495 of the Customs Regulations of 1908 provides:

Whenever a weigher has reason to believe that the invoice or the schedule tare of any merchandise is greater than the real tare, he is authorized and required to ascertain the actual tare, and, when he finds it necessary or is required to ascertain actual tare, as many casks, boxes, or other coverings as may be necessary for that purpose will

be emptied and accurately weighed.   Weighers are required to note in their returns at the head of the column of tares whenever the tare returned by them is "actual tare."

When a test is made for actual tare of any portion of an invoice, such test must be of representative packages of the whole importation.

And article 1497 provides, *inter alia:*

* * *  But if the importer, consignee, or agent shall be dissatisfied with the tare herein prescribed, and shall file with the collector a written notice of such dissatis- faction, or if the collector doubts the exactness of the schedule tare in any instance, it will be his duty to cause the actual tare or weight of the cask or package to be ascertained, and for that purpose he may cause to be emptied and weighed such number of casks and packages as he may think proper.

In all other cases actual tare only shall be allowed.

It would seem clear that these regulations, taken as a whole, contemplate that actual tare shall be ascertained, and prescribe the method of ascertaining what it should be.  The only regulations brought to our attention made by the Secretary of the Treasury which point out the method of ascertaining the real tare are those which we have quoted.  When these methods have been applied, it would seem to be opposed to the very terms of the statute to permit a mere guess or estimate as to what tare should be allowed to be substituted for the result.

It follows that the decision of the Board of General Appraisers, as to this one importation by the steamship *Hanseat,* should be *modified,* and reliquidation directed on the basis of the actual tare ascertained by the weigher, namely 3.36 pounds per bag, instead of 3 pounds per bag.