GALLAGHER & ASCHER v. UNITED STATES (No. 2656)[1]

1. REGULATIONS—PUBLICATION.

Regulations made by the Secretary of the Treasury by authority of the Tariff Act of 1922 are not required to be printed in any particular form or place. That the temporary regulations prescribed by authority of paragraph 1104, for ascertaining the weight of wool under paragraph 1102, were not published in the Treasury Decisions does not invalidate them.

2. REGULATION IS LAW—WOOL WEIGHT.

A reasonable departmental regulation, prescribed under authority of law, when duly promulgated, has the same force and effect in law as if it were written into the statute. The collector having determined the weight of wool on the skin, under paragraph 1102, Tariff Act of 1922, in accord with the temporary regulations prescribed by the Treasury Department by authority of paragraph 1104, his determination can not be impeached or controverted by proof of weight obtained by any other method.

United States Court of Customs Appeals, April 17, 1926

APPEAL from Board of United States General Appraisers, G. A. 9005, T. D. 40927

[Affirmed.]

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.

[Oral argument January 21, 1926, by Mr. Tompkins and Mr. Carter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The merchandise involved in this suit was entered January 17, 1923, and consisted of wool on the skin in the grease. It is admittedly subject to a duty at 30 cents per pound on the clean content, under the provisions of paragraph 1102 of the Tariff Act of 1922, which reads:

PAR. 1102. Wools,· not specially provided for, and hair of the Angora goat, Cashmere goat, alpaca, and other like animals, imported in the grease or washed, 31 cents per pound of clean content; imported in the scoured state, 31 cents per pound; imported on the skin, 30 cents per pound of clean content.

Paragraph 1104 of the Tariff Act of 1922 reads as follows:

PAR. 1104. The Secretary of the Treasury is hereby authorized and directed to prescribe methods and regulations for carrying out the provisions of this schedule relating to the duties on wool and hair.

On September 23, 1922, under the provisions of paragraph 1104 of said tariff act, the Secretary of the Treasury issued a regulation, which is as follows:

1 T. D. 41548.

[Division of Customs, Circular Letter No. 612]

SEPTEMBER 23, 1922.

REGULATIONS GOVERNING THE ENTRY AND WITHDRAWAL OF WOOL

*To Collectors of Customs and Others Concerned:*

In order to facilitate the entry and delivery of wool, the following temporary regulations are promulgated for the guidance of customs officers:

(1) On the entry or withdrawal of wool dutiable on the clean content under the provisions of paragraph 1102 of the tariff act of 1922, the importer will be required to file with the entry or withdrawal a statement showing the number of bales, the marks, grade or quality, weight, unit price, and estimated shrinkage and yield, in substantially the following form:

| Entry No. | Marks | Grade or quality | Weight | Unit price | Shrinkage | Yield |
|-----------|-------|------------------|--------|------------|-----------|-------|
|           |       |                  |        |            |           |       |

The total estimated or clean content shall be stated in the entry or withdrawal.

(2) In the absence of such statement, or when such statement is obviously incorrect, the collector will take estimated duty on the full weight as the clean content.

(3) The collector shall designate not less than one bale out of such lot or grade for examination at the public stores.

(4) The appraising officers will follow commercial methods in determining the clean content of wool, and the clean content reported by the appraiser will be accepted by the collector in the assessment and liquidation of duties.

(5) If the clean content reported by the appraiser differs from the estimate filed with the entry or withdrawal, the importer shall be immediately notified, and if he does not agree with the appraiser's findings, representative samples of the lot or lots on which there is a disagreement shall be scoured and the clean content determined by laboratory or factory methods.

W. G. PLATT, *Acting Assistant Secretary.*

The Government weigher, at the port of Chicago, in order to determine the clean content of the wool imported, proceeded under the regulation issued by the Treasury Department on September 23, 1922. From the meager testimony in the record, it is disclosed that he took a representative bale of the lot and from the bale containing from 300 to 400 skins selected six, eight, or ten skins, from which the wool was sheared and scoured, and by comparison the clean content of the entire importation was estimated.

The importers protested the liquidation of the entry, claiming that the dutiable weight at the time of entry was less than the weight determined by the customs official, and that the shrinkage of the wool was greater than that. found by such official. Importers, obtaining possession of the importation, had the wool pulled, and claim that the actual weight of the pulled wool was more than that indicated by the estimation of the Government, and that the amount of pulled wool multiplied by the percentage of clean content, 68.22

per centum, in one protest and 63.2 per centum in another protest, as found by the Government, gives, by several thousand pounds, less clean content weight to the importation than that estimated by the Government.

At the hearing, before the Board of General Appraisers, importers attempted to prove the actual weight of the wool as found by them in the manner indicated, to which testimony the Government objected. The testimony was received by the one member of Board 1 who heard the witnesses at the port of Chicago, but withheld his ruling upon its admissibility and reserved the question for the action of the full board. The board, in arriving at its decision, rejected the proffered testimony on the theory that the regulation issued by the Treasury Department on September 23, 1922, being consistent with and not repugnant to the statute had the same force and effect as though it was embodied within the statute itself, and that proof of actual weight obtained in any other manner than that prescribed by the regulation was not competent.

Before the board, no question was raised by importers as to the validity or force of the regulation, nor was the reasonableness of the same questioned, unless it can be said that the testimony of importers' witness to the effect that he "would not take six skins to represent 100 bales" and "would want a bigger sample than that" was an attack upon the reasonableness of the regulation.

Upon the instant record we do not think the question of the reasonablenesses of the regulation requires any consideration by us.

In this court, the importers raise, for the first time, what we regard as the sole question in the case. This question involves the validity of the regulation of September 23, 1922, in so far as it is contended by importers that it was not duly published and that for this reason they are not debarred from proving the actual quantity and weight of the merchandise imported.

There is no proof in the record that the regulation was not published. An examination of the Treasury Decisions discloses, however, that it was not printed along with other regulations in the publication known as "Treasury Decisions." We have carefully examined the authorities and find no law requiring that they shall be so published.

Paragraph 161 of the Revised Statutes on departmental regulations is as follows:

(R. S. Sec. 161.)    Departmental regulations.

The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it.

In *Haas* v. *Henkel*, 216 U. S. 462, 480, it was held that departmental regulations prescribed under section 161, Revised Statutes, "need not be promulgated in any set form, nor in writing."

It will be noted that paragraph 1104 authorizing the regulation says that the Secretary of the Treasury is authorized and directed to "prescribe methods and regulations." In many different sections and paragraphs of the Tariff Act of 1922 will be found provisions authorizing the Secretary of the Treasury to make rules and regulations, and, in most instances, the word "prescribe" is used. In section 485 consignee is required to make declaration "in a form to be *prescribed*" by the Secretary of the Treasury, and in the same section "* * * such agent shall give a bond, in a form and of a penal sum *prescribed* by the Secretary of the Treasury." In section 303, the Secretary of the Treasury "shall *make* all needful regulations for the identification of such articles and merchandise." In section 486, "bond shall be given in a form and in a penalty *to be prescribed* by the Secretary of the Treasury." In section 556, the Secretary of the Treasury "shall from time to time *establish* such rules and regulations as may be necessary for the *establishment* of bonded warehouses." In section 506 the Secretary of the Treasury is authorized "to *prescribe* and *issue* regulations" for the ascertainment of tare upon imported merchandise.

A consideration of the above uses of the various terms would indicate that when Congress authorized and directed the Secretary of the Treasury to prescribe regulations and methods for carrying out the provisions of schedule 9, it did not mean by such authorization and direction that he was required to print them in any particular form or place. We do not believe Congress intended that the Secretary of the Treasury might privately or secretly write to or communicate with the collector prescribing such a rule or regulation without in some form promulgating the same so that others interested might have reasonable opportunity of becoming advised as to its provisions. Such action on the part of the Secretary would be an instruction and not a regulation. *Landram* v. *United States*, 16 Ct. Cls. 74. Regardless of the fact that it may be to the best interest of all concerned that such an important regulation as the one involved here should be printed and published in the Treasury Decisions, there is no justification for the contention that the failure to so print it renders it invalid. A regulation may be promulgated without being printed in the Treasury Decisions, and in the same sense it may be published without being displayed in any recognized publication. To promulgate means to make known. *Wooden* v. *Western New York & P. R. Co.*, 18 N. Y. Supp. 768. "Prescribe" has been held to be a synonym of the word "establish." *Ex parte Lothrop*, 118 U. S. 113.

The record contains no proof as to whether the regulation did or did not come to the notice of the importers in this case, or as to whether it was or was not promulgated sufficiently, by posting or otherwise, to require them to take notice of it as a matter of law. We are, therefore, not called upon to determine what constitutes a proper promulgation of a rule or regulation of the Treasury Department, and do not so decide. We do decide that there is nothing in the record before us which shows the questioned regulation not to have been properly promulgated.

A reasonable departmental regulation, prescribed under authority of law, when duly promulgated, has the same force and effect in law as if it were written into the statute. *Mead* v. *United States*, 81 Fed. 684; *Wilkins* v. *United States*, 96 Fed. 837; *Gump* v. *United States*, 3 Ct. Cust. Appls. 137.

The regulation being in full force and effect on and before the date of importation, and at the time the customs officials functioned under it, the clean content of the wool in controversy had to be determined in the manner prescribed by the regulation. That the Government weigher proceeded in accordance with the regulation is not questioned. Importers sought to show that, while acting in the proper discharge of his duties, he ascertained an incorrect weight, in so far as his estimation of weight differed from the actual weight. Since the estimated weight was ascertained in accordance with the regulation and, therefore, in accordance with the statute, it can not be impeached or controverted by proof of weight obtained by any other method. *American Sugar Refining Co.* v. *United States*, 3 Ct. Cust. Appls. 69; *United States* v. *Lozano, Son & Co.*, 6 Ct. Cust. Appls. 281; *Lunham* v. *United States*, 1 Ct. Cust. Appls. 220; *Penick & Ford* v. *United States*, 12 Ct. Cust. Appls. 432; *United States* v. *Rettig*, 2 Ct. Cust. Appls. 537; *Gump* v. *United States*, *supra*.

The issues in this case must not be confused with the line of cases which hold that a customs official, while attempting to proceed in accordance with regulations failed to proceed in accordance therewith, or where the customs official ignores the regulation. The importers, in this case, we think, would have had the right to show, either that the weigher did not proceed in accordance with the regulation, or while proceeding in accordance with it, incorrectly weighed the wool. For instance, appellant could question the inaccuracy of the application of the regulation, but he can not question the method of determining or estimating the weight if the weigher followed the method prescribed in a reasonable regulation even though it develops that the method prescribed by the regulation produced less accurate results than some other method.

T. D. 22078, G. A. 4672, relied upon by importers, does not support their contention. There, it was a question of excessive weight.

occasioned by the wool, which constituted the importation, absorbing a very large amount of moisture in transportation. This case turned upon the point that the tariff act levied a duty on woolen noils and "not on sea water." There the importer was permitted to prove, under the ordinary rule of evidence, that the weights were 496 pounds heavy on account of excessive amount of sea water. The weigher had evidently taken no consideration of the existence of the sea water in the weight of the wool. The board held that the importer would have the right to prove the excessive weight occasioned by the sea water even though his method of determining the weight did not comply with the regulation of the Treasury Department. Manifestly, in that case, the weigher had not proceeded in accordance with the regulations of the Treasury Department in so far as he had taken no consideration whatever of the sea water. In the instant case the appraiser did give consideration to the amount of tare in the wool, but the importer seeks to question the accuracy of the method prescribed by the Treasury Department.

The Board of General Appraisers properly rejected the proffered testimony. The judgment of the Board of General Appraisers is *affirmed.*