## JAPAN IMPORT CO., INC. *v.* UNITED STATES

**No. 4627.**—Invoices dated Kobe, Japan, January 27, 1933.
Certified January 28, 1933.
Entered at San Francisco, Calif., March 1, 1933.
Entry No. 8478/A–B–C.

### Second Division, Appellate Term

(Decided August 11, 1939)

*Barnes, Richardson & Colburn (Samuel M. Richardson* of counsel) for the appellant.
*Webster J. Oliver*, Assistant Attorney General (*William J. Vitale*, special attorney), for the appellee.

Before TILSON, KINCHELOE, and DALLINGER, Judges

TILSON, Judge: This is an application for review of the decision and judgment of the trial court in which it found "that the basis of value and the appraisements made by the appraiser both under the Antidumping Act of 1921 and the Tariff Act of 1930 are as found by the appraiser."

The merchandise consists of a total of 540 packages of rubber-soled canvas shoes imported from Japan. Of the said 540 packages only 13 were designated for examination and examined for the purpose of appraisement. Clearly this is not a compliance with section 499, Tariff Act of 1930, but the defendant attempts to justify its failure to comply with said section 499 by a so-called special regulation in which the Acting Secretary of the Treasury authorized the collector of customs at San Francisco to examine a less number of packages than

10 per centum of the importations, but in no case less than 1 per centum of every invoice.

The pertinent part of the said letter from the Acting Secretary of the Treasury reads as follows:

The COLLECTOR OF CUSTOMS,
        San Francisco, California.

SIR: Reference is made to the Department's letter of March 28, 1930 (102057), relative to the designation for examination at your port under section 499 of the tariff act.

I am of the opinion that the examination of less than one package of every ten packages of each importation of the articles hereinafter enumerated will amply protect the revenue.

You are, therefore, hereby authorized to examine a less number of packages than 10 percent of importations of the following articles, but in no case shall less than 1 percent of every invoice of such articles be examined, except upon special instructions from the Secretary of the Treasury:

\*      \*      \*      \*      \*      \*      \*

Boots and shoes, except Chinese.

\*      \*      \*      \*      \*      \*      \*

Respectfully,

SEYMOUR LOWMAN,
        Acting Secretary of the Treasury.

At the trial of this case counsel for the plaintiff moved the court for an order declaring the appraisement null and void and setting the same aside—

On the ground that the collector failed to designate, and the examiner failed to examine at least one out of every ten packages, as required by the provisions of Sec. 499 of the tariff act of 1930.

In support of the above motion counsel for the plaintiff, at the trial at San Francisco, called the assistant collector of customs, who produced a letter addressed to the collector of customs at San Francisco, dated August 6, 1932, and signed by Seymour Lowman, Assistant Secretary of the Treasury, a portion of which is copied above, and under the authority of which the collector purported to act in designating a less number of packages than required under section 499. This witness, when asked in what way, if at all, the contents of this letter were brought to the attention of the importing interests or the customs brokers serving them at the port of San Francisco, stated:

Copies, of course, were made for the appraiser and for the deputy collector in charge of our entry and warehouse division. I will have to look at the exhibit to see if a copy was given otherwise. There were two given to the man in charge of the entry division and one to the appraiser of merchandise.

This witness further stated that they were not in the habit of putting this sort of communication on the bulletin board at San Francisco, and that:

We did consider that the deputy collector in charge of the entry division would call it to the attention of the brokers who represented the importers and they would have that knowledge.

Q. Do you know whether that was done, Mr. Marshall?—A. *I only assume it was.*

Q. As far as you know this letter was simply given to the deputy collector in charge of the entry and warehouse division and a copy to the appraiser of this port?—A. Yes.

It is worthy of note that the assistant collector of customs, when being interrogated as to the promulgation of this letter, after stating that copies were made for the appraiser and the deputy collector in charge of the entry and warehouse division, stated, "I will have to look at the exhibit to see if a copy was given otherwise," and apparently after examining the exhibit the witness stated, "There were two given to the man in charge of the entry division and one to the appraiser of merchandise." This corresponds to the notation in the lower right corner of said exhibit, as follows: "2–TJB 1 APPRAISER."

So far as this record shows that letter might have been written privately to the collector of customs at San Francisco. It contains no instructions for its promulgation, and the testimony of the assistant collector of customs, pointed out above, definitely shows that aside from the original which was presumably received by the collector of customs, only two copies thereof were given to the man in charge of the entry division and one copy to the appraiser.

The point relied on by counsel for the plaintiff is that this letter was not promulgated in such a way as to make it binding on the plaintiff in this case. We are inclined to believe that had this letter been properly promulgated it would have been sufficient and an examination based upon the examination of the number of packages therein authorized would have been legal. We must therefore determine whether or not the promulgation, as hereinbefore set out, constituted a proper and legal promulgation thereof within the meaning of section 499, so as to bind the importers in this case.

In an effort to establish that this letter was not promulgated counsel for the plaintiff addressed a letter to the Secretary of the Treasury, the pertinent part of which is as follows:

Will you be good enough to inform us whether this letter was published in the Weekly Treasury Decisions, and if so, what its Treasury Decision number is? If not so published, will you be kind enough to inform us whether the same was called to the attention of the public in any other official communication?

To the above communication the Commissioner of Customs replied in part as follows:

You are advised that *the letter in question,* addressed to the collector of customs, San Francisco, California, under date of August 3, 1932 (102057) *was not published as a Treasury decision nor was it called to the attention of the public in any other official communication.* [Italics ours.]

In view of the questions propounded to the witness Marshall in regard to the promulgation of this letter, if copies thereof had been given to any one other than the appraiser and the deputy collector in

charge of the entry division, or its contents made known to others in any other way, a proper respect for his oath would have required that he so state, and we are not going to assume that he did not have proper respect for his oath. Every indication is that he told the truth, *the whole truth*, and nothing but the truth, and no contrary state of facts being shown we shall proceed upon the theory that he did so testify.

So far as the promulgation of this letter is concerned, the record establishes that both it and its contents were kept well within the official circle, and at no time was it ever made known to the interested, affected importing public. The letter in this case is more in the nature of a privately or secretly written communication to the collector of customs at San Francisco prescribing a rule or regulation without in any manner promulgating the same so that others interested might have an opportunity to become advised as to its provisions. It is certainly not incumbent upon the importers to make daily inquiry at the office of the collector of customs to ascertain whether or not he has received any communication from the Secretary of the Treasury which might affect the entry of their imported merchandise. Rather it is incumbent upon the collector when he receives such a communication to call it to the attention of the importing public and others concerned and interested in such manner as to advise them of the contents thereof.

In the case of *Wooden* v. *Western New York P. R. Co.*, 18 N. Y. Supp. 768, the word "promulgate" was defined as follows:

To promulgate means to make known.

The Oxford Dictionary defines "promulgate" as follows:

To make known by public declaration; to publish; esp. to disseminate   *   *   * or to proclaim (some law, decree, or tidings).

The Century Dictionary and Cyclopedia defines "promulgate" as follows:

To make known by open declaration, as laws, decrees, or tidings; publish; announce; proclaim.

The record in this case shows that the letter from the Secretary of the Treasury, or the contents thereof, was not made known by public or open declaration, that it was not published, that it was not announced, and that it was not proclaimed in any manner. The fact that it was "considered" that the deputy collector in charge of the entry division would call it to the attention of those interested does not in any manner discredit or disprove the positive testimony of witness Marshall that aside from the original only two copies were given to the man in charge of the entry division and one copy was given to the appraiser.

The fact that only two copies of this letter were given to the deputy collector in charge of the entry division and only one copy was given to the appraiser, and that it was only "considered" that the deputy collector in charge of the entry division would call it to the attention of those interested, is sufficient proof that this letter did not come to the notice of the importer in this case by that route, and the evidence is also clear that it was not promulgated sufficiently, by posting or otherwise, to require the importers to take notice of it as a matter of law.

In line with the above, we quote with approval the following from the opinion of Judge Sullivan in the case of *United States* v. *Canada Packers, Ltd.*, Reap. Dec. 4417:

In the dissenting opinion of Judge Garrett in *United States* v. *Tower*, 24 C. C. P. A. 304, T. D. 48754 (p. 310), is an excellent elucidation of the law on the subject of burden of proof in cases relative to a proper promulgation of a rule or regulation of the Treasury Department. The Government has charge of these regulations, creates them, and is required by law to publish them for the benefit of the public. The Government knows whether or not a regulation has been published. It seems to us to require the plaintiff (importer) to prove that which the Government should do, is carrying the rule as to burden of proof a long way. However, in the *Tower* case, *supra* the majority of the court held that the duty devolved upon the plaintiff. The court did hold that such special regulation as is provided for in section 499 should be promulgated to be valid, making promulgation a question of fact.

The evidence in the case at bar establishes, if the burden rested upon the plaintiff, that the regulation was not promulgated. The evidence is clear the plaintiff did not have any knowledge of this regulation, even if such knowledge would bind the plaintiff, which we do not hold. The statute contemplates written promulgation.

In view of the circumstances under which witness Marshall appeared and testified in this case, he had ample opportunity to inform himself as to all the facts connected with and surrounding the question of the promulgation of this letter from the Secretary of the Treasury, and as to the dissemination of the information contained therein. Under the questions propounded to him concerning this matter it is quite clear that if any one other than the collector, the appraiser, and the deputy collector in charge of the entry division at San Francisco had had any knowledge of this letter or the contents thereof, he would have so stated while on the stand testifying. As stated by Judge Sullivan in the *Canada Packers* case, *supra:*

The Government has charge of these regulations, creates them, and is required by law to publish them for the benefit of the public. The Government knows whether or not a regulation has been published. [Italics ours.]

On the record before us, which we have carefully examined, and for the reasons stated herein, and accepting the majority opinion in the *Tower* case, *supra*, as here controlling, we find that assuming that the letter of Acting Secretary Lowman if legally promulgated can be

considered a special regulation within the meaning of said section 499, the plaintiff has made a *prima facie* case that said regulation was not promulgated in such manner as to give notice to the interested parties.

We therefore hold, as matter of law, that the attempted appraisement in this case is null and void *ab initio*, and of no effect. The decision and judgment of the trial court is accordingly reversed. Judgment will be rendered accordingly.