UNITED STATES *v.* JAPAN IMPORT. CO., INC. (No. 4300) [1]

United States Court of Customs and Patent Appeals, May 29, 1940

*Webster J. Oliver*, Assistant Attorney General (*William J. Vitale*, special attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Hadley S. King* of counsel) for appellee.

[1] C. A. D. 127.

[Oral argument April 10, 1940, by Mr. Vitale and Mr. King]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The United States has here appealed from the judgment of the United States Customs Court, Second Division, which reversed the judgment of the trial judge, who sustained the appraised value of the merchandise he had under consideration in an appeal by the importer from the appraised value found by the appraiser.

The judgment of the single judge sitting in reappraisement also overruled the importer's motion for an order "holding the instant appraisement to be null and void, and vacating and setting aside the said appraisement" on the ground that the appraiser had failed to examine at least 1 out of every 10 packages as required by section 499, Tariff Act of 1930. Entry 8478, which is involved here, covers three invoices involving 93, 300, and 147 cartons of merchandise, of which only 2, 7 and 4 cartons, respectively, were designated and examined.

The said Second Division in reversing the judgment of the single judge sitting in reappraisement held, in an opinion by Judge Tilson, that as a matter of law "the attempted appraisement in this case is null and void ab initio, and of no effect."

The merchandise involved, rubber-soled canvas shoes imported from Japan, was imported at the port of San Francisco in 1933 and the case was transferred to the San Francisco docket upon the request of both parties for the purpose of permitting the Government to introduce a letter from the Acting Secretary of the Treasury to the Collector of Customs at San Francisco and for the further purpose of permitting the importer to offer proof concerning the promulgation or lack of promulgation of the said letter.

Section 499, supra, so far as pertinent, reads as follows:

SEC. 499. EXAMINATION OF MERCHANDISE.

\* \* \* The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by special regulation permit a less number of packages to be examined. \* \* \*

The said letter by the Acting Secretary of the Treasury to the Collector of Customs was introduced in evidence and a copy of the same is found in the record and, so far as pertinent, reads as follows:

TREASURY DEPARTMENT,
*Washington*, Aug. 6, 1932.

The COLLECTOR OF CUSTOMS,
  *San Francisco, California.*

SIR: Reference is made to the Department's letter of March 28, 1930 (102057), relative to the designation of packages for examination at your port under Section 499 of the Tariff Act.

I am of the opinion that the examination of less than one package of every ten packages of each importation of the articles hereafter enumerated will amply protect the revenue.

You are, therefore, hereby authorized to examine a less number of packages than 10 percent of importations of the following articles, but in no case shall less than 1 percent of every invoice of such articles be examined, except upon special instructions from the Secretary of the Treasury:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Boots and shoes, except Chinese.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

　　　　Respectfully,

[SEAL]　　　　　　　　(Sgd.) SEYMOUR LOWMAN,
　　　　　　　　　　　*Acting Secretary of the Treasury.*

The importer introduced the testimony of George A. Marshall, who was at that time, and who had been for 4½ years previous thereto, Assistant Collector of Customs at the port of San Francisco. So much depends upon his testimony that we quote all that is relevant to the question of the promulgation of the alleged special regulation. It follows:

Q. Mr. Marshall, will you tell us, please, in what way, if at all, this letter or the contents of the letter, Exhibit 1, was brought to the attention of the importing interests or the customs brokers serving them at the port of San Francisco? A. Copies, of course, were made for the appraiser and for the deputy collector in charge of our entry and warehouse division. *I will have to look at the exhibit to see if a copy was given otherwise.* [Italics ours.] There were two given to the man in charge of the entry division and one to the appraiser of merchandise.

Q. Have you in the customhouse at San Francisco a bulletin board upon which a great many notices of interest to importers are. fastened from time to time?— A. Yes; we do. We are not in the habit of putting this sort of communication in that board.

Q. You consider this one of no interest to the importing public?—A. We did not consider it of no interest, but we did consider that the deputy collector in charge of the entry division would call it to the attention of the brokers who represented the importers, and they would have that knowledge.

Q. Do you know whether that was done, Mr. Marshall?—A. I only assume it was.

Q. Do you know whether—perhaps this is repetitious, but I will ask it again. Do you know whether it was called to the attention of any particular importers; that is, the contents of this letter?—A. I have no knowledge as to that.

Q. As far as you know this letter was simply given to deputy collector in charge of the entry and warehouse division and a copy to the appraiser of this port? Judge EVANS. Two copies, I believe, he said were given to the deputy collector. A. Yes.

The importer's counsel on September 28, 1938, addressed a letter to the Secretary of the Treasury, Washington, D. C., and asked that they be furnished with the information as to whether or not the said letter by the Acting Secretary of the Treasury had been published in the "Weekly TREASURY DECISIONS" or if it was "called to the attention of the public in any other official communication."

The Commissioner of Customs on September 30, 1938, made reply by writing to importer's counsel a letter which is made part of the record, the pertinent portion of which letter follows:

You are advised that the letter in question, addressed to the collector of customs, San Francisco, California, under date of August 6, 1932 (102057), was not published as a Treasury decision nor was it called to the attention of the public in any other official communication.

In *United States* v. *C. J. Tower & Sons*, 24 C. C. P. A. (Customs) 304, T. D. 48754, this court held that a letter, in many respects similar to the one at bar, would, if properly promulgated, be a special regulation, which the collector would be justified in following. The promulgation of the letter was there questioned. It appeared that the same had not been published in the official TREASURY DECISIONS. It was there held, in effect, that we, in the absence of proof to the contrary, would have to assume that the proper officials had performed their duty, that the regulation had been properly promulgated, and that the burden was upon the importer to prove the contrary.

The decision in the *Tower & Sons* case, *supra*, was based largely upon this court's holding in a somewhat similar case, *Gallagher & Ascher* v. *United States*, 14 Ct. Cust. Appls. 38, T. D. 41548, in which this court held that regulations, authorized under paragraph 1104, Tariff Act of 1922, for carrying out the provisions of the wool schedule, must be promulgated in order to be valid, that to promulgate meant to make known, and that a regulation could be promulgated or made known without being published in any recognized publication. There was no proof in the record there that the regulations had been promulgated, although it appeared that they had not been published in the TREASURY DECISIONS. The regulations involved were signed by the Acting Assistant Secretary of the Treasury and were addressed to "Collectors of Customs and Others Concerned." We there said:

* * * We do not believe Congress intended that the Secretary of the Treasury might privately or secretly write to or communicate with the collector prescribing such a rule or regulation without in some form promulgating the same so that others interested might have reasonable opportunity of becoming advised as to its provisions. Such action on the part of the Secretary would be an instruction and not a regulation. *Landram* v. *United States*, 16 Ct. Cls. 74. Regardless of the fact that it may be to the best interest of all concerned that such an important regulation as the one involved here should be printed and published in the TREASURY DECISIONS, there is no justification for the contention that the failure to so print it renders it invalid. A regulation may be promulgated without being printed in the TREASURY DECISIONS, and in the same sense it may be published

without being displayed in any recognized publication. To promulgate means to make known. *Wooden* v. *Western New York & P. R. Co.*, 18 N. Y. Supp. 768. "Prescribe" has been held to be a synonym of the word "establish." *Ex parte Lothrop*, 118 U. S. 113.

The record contains no proof as to whether the regulation did or did not come to the notice of the importers in this case, or as to whether it was or was not promulgated sufficiently, by posting or otherwise, to require them to take notice of it as a matter of law. We are, therefore, not called upon to determine what constitutes a proper promulgation of a rule or regulation of the Treasury Department, and do not so decide. We do decide that there is nothing in the record before us which shows the questioned regulation not to have been properly promulgated.

The sole question, we think, which we need to consider, is the question considered and decided by the Second Division of the Customs Court, to wit: Has the presumption that the alleged special regulation was properly promulgated been overcome by proof that it was not so promulgated?

The Second Division of the Customs Court, from whose judgment this appeal is taken, reviewed the evidence in the record and found therefrom that it was shown that the purported special regulation had not been promulgated and that it was in the nature of a "privately or secretly written communication to the collector of customs at San Francisco prescribing a rule or regulation without in any manner promulgating the same so that others interested might have an opportunity to become advised as to its provisions."

While the testimony of the Assistant Collector of Customs at the port of San Francisco is not very clear on the critical point in controversy, we think a fair construction of the same supports the conclusion arrived at by the Appellate Division. Notwithstanding the fact that we have hereinbefore quoted the pertinent testimony as it appears in the record, we think it proper to repeat certain phases of the same in connection with expressing our views as to the effect it should be given.

The record shows that the Secretary of the Treasury, through his acting assistant, in 1932 addressed a letter to the Collector of Customs at San Francisco in which he informed the collector at that port that as to certain articles, including boots and shoes, except Chinese, the revenues would be protected if less than 1 package out of every 10 were examined, and that he was authorized to examine less than 10 per centum of the importations but not less than 1 per centum of each invoice except upon special instructions from the Secretary of the Treasury; that three copies of the letter when received were made, one for the appraiser and two for the deputy collector in charge of the entry and warehouse division; and that there was no other effort to further promulgate or make known the contents of the letter. The sole witness in the case, when definitely asked in what way the contents of the letter was brought to the attention of the importing public, stated that copies were made as above stated. If more had

been done it is fair to assume that the witness would have at that time so stated. After he had answered the question he stated: "I will have to look at the exhibit to see if a copy was given otherwise"; that is, otherwise than to the appraiser and the deputy collector. He then stated, presumably after having looked at the exhibit to get such information as it afforded, that "There were two given to the man in charge of the entry division and one to the appraiser of merchandise." He stated that there was a bulletin board in the customhouse upon which notices of interest to importers were fastened from time to time (article 818 (*i*) of the Customs Regulations of 1937 requires the posting of certain bulletins in conspicuous places in customhouses for the information of importers), but that they were not in the habit of putting communications like the controverted letter on that board in view of the fact that "we did consider that the deputy collector in charge of the entry division would call it to the attention of the brokers who represented the importers, and they would have that knowledge." When asked if that was done his answer was "I only assume it was" and that he had no knowledge of its being called to the attention of any particular importers. The question was then asked "As far as you know this letter was simply given to deputy collector in charge of the entry and warehouse division and a copy to the appraiser of this port?" Judge Evans then corrected the question by saying "Two copies, I believe, he said were given to the deputy collector" and the witness answered "Yes." It seems to us that this is a definite answer that this was all that was done. It is obvious that Mr. Moyle, the Commissioner of Customs, who, for the Treasury Department, answered the attorneys' letter of September 28, 1938, would not be likely to have any information with respect to whether or not the letter had been posted on the bulletin board. His reply was confined to the exact question asked— that it had not been published in any official communication.

We think that the Appellate Division of the Customs Court arrived at the right conclusion on the evidence produced and that such evidence fairly shows that the purported special regulation was merely a departmental communication by the proper authorities in Washington to the Collector of Customs at San Francisco, and that it was not intended to require that the same should be brought to the attention of importers in any of the ways that legal and proper promulgation could have been made. While the assistant collector stated "We did not consider it of no interest to the importing public," it seems obvious from all the facts that the responsible agents of the Government must have been of the opinion that it was not a matter with which importers of the goods listed in the letter had any concern.

It is unnecessary to here detail the holdings of the various cases decided by this court to the effect that an appraisement is invalid

unless the requirements of the statute relating to the number of packages to be examined have been complied with. Regardless of whether an importer was injured or not, he clearly had the right to raise the question of the invalidity of an appraisement which raises his entered value.

It is our conclusion that since the so-called special regulation was never promulgated, it amounted to nothing more than a private instruction to the collector, and was not a special regulation such as the statute contemplated, and one which would relieve the appraiser from carrying out the express mandate of the statute which requires that 1 of every 10 packages be examined.

The judgment of the United States Customs Court is *affirmed*.