UNITED STATES *v.* LEONARD W. MORITZ CO. ET AL (No. 4377)[1]

United States Court of Customs and Patent Appeals, December 26, 1942

*Paul P. Rao*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Dorothy C. Bennett*, special attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellees.

[Oral argument December 1, 1942, by Mr. Lawrence and Mr. Schwartz]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal in reappraisement proceedings from a judgment of the United States Customs Court (Third Division) affirming the

[1] C. A. D. 225.

judgment of the trial court holding that the appraisements involved are null and void.

Two reappraisement appeals are involved, Nos. 117447–A and 117448–A. For the purpose of trial the appeals were consolidated before the trial court.

The merchandise involved consists of two shipments of cream separators imported at the port of New York from Finland, one in February and the other in March 1936.

The merchandise was appraised at a higher value than its entered value. Appeals were taken for reappraisement by appellees and the trial court held that the appraisements appealed from were null and void on the ground that the collector had failed to designate, and the appraiser had failed to examine, one out of every ten packages of the merchandise, as required by the provisions of section 499 of the Tariff Act of 1930.

Said section 499 so far as it is here pertinent reads as follows:

\* \* \* The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated *unless the Secretary of the Treasury*, from the character and description of the merchandise, *is of the opinion that the examination of a less proportion* of packages will *amply protect the revenue* and by *special regulation* permit a *less number of packages* to be examined. The collector or the appraiser may require such additional packages or quantities as either of them may deem necessary. \* \* \*. [Italics supplied.]

It was conceded on the trial below that less than one of every ten packages was designated and examined, but the Government contended there, as it contends here, that a certain "Customs Catalogue #3418 as amended by a telegram dated June 25, 1932, from the Acting Secretary of the Treasury to the Collector of Customs, New York" constitutes a "special regulation" under the provisions of said section 499, under which the examination of a less number of packages than one out of ten was permitted.

The trial court found that said Customs Catalog as amended by said telegram had no force as a special regulation within the provisions of section 499 *supra*. It based this holding upon a finding of fact that appellees had established that said Customs Catalog as amended by said telegram was never duly promulgated. The Third Division, upon appeal, agreed with the findings of the trial court.

Although the record contains evidence of market value of the instant merchandise, the only question presented to us is whether the said Customs Catalog as amended by said telegram was ever promulgated.

The question of whether said Customs Catalog as amended by said telegram constituted a special regulation under the provisions of said section 499 was before us in the case of *United States* v. *Daniel F. Young, Inc. (Minobu Trading Cor.), et al*, 27 C. C. P. A. (Customs) 124, C. A. D. 73. Upon the record in that case, we held that it was such a regulation. After full discussion of various questions there involved, we said:

We are of opinion, therefore, that Customs Catalog 3418, as amended, is a valid special regulation by the Secretary of the Treasury, assuming, as we must, there being no evidence to the contrary, that it was duly promulgated. *United States* v. *C. J. Tower & Sons*, 24 C. C. P. A. (Customs) 304, T. D. 48754.

The case at bar differs from the case last cited with respect to the question now before us, in that appellees here have introduced evidence upon the question of whether Customs Catalog #3418 as amended by said telegram was ever promulgated This being a reappraisement proceeding, if there is substantial evidence in the record to support the lower court's finding that said Customs Catalog as amended was not duly promulgated, we must affirm the judgment appealed from.

Said Customs Catalog introduced in evidence, Collective Exhibit 2, is a bound volume, on the cover of which is the following:

TREASURY DEPARTMENT

Customs Catalogue No. 3418

LIST OF IMPORTS, ETC.

Collector's Office

Port of New York

On page 3 is found the following:

LIST OF IMPORTS

of which

LESS THAN 1 PACKAGE IN 10 MAY BE SENT FOR EXAMINATION TO THE UNITED STATES PUBLIC STORE AT THE PORT OF NEW YORK,

When packed in bottles, jars, tins, cases, or tin-lined barrels.

(One representative package to be sent to public store when merchandise is imported in packages of same contents and value, or when purchased at the same price per unit of weight, gauge, or measure. Department letters, Aug. 10 and 24, 1904, and May 12, 1914.)

Following this language is a "List of Imports" embracing several thousand articles of merchandise covering practically all of the merchandise affected by the Tariff Act of 1930.

In this list is found the following:

(Separators, cream, one each invoice, however packed.)

It is conceded that the involved merchandise is described in the above quotation.

The telegram, Exhibit 1, purporting to amend the language last above quoted reads as follows:

COLLECTOR OF CUSTOMS,
 *New York, N. Y.*

General rule page three customs catalogue thirty four eighteen at head of list of imports changed to read as follows quote in the opinion of the Secretary of the Treasury the Examination at the Appraisers Stores on the wharf or elsewhere or samples or representative packages although constituting a less proportion than ten percent of the shipment is considered amply sufficient to protect the revenue when merchandise is bought by sample or is imported in packages of same contents and value or when purchased at the same price per unit of weight gauge or measure but in no case shall less than one percent be examined except upon specific authority from the department unquote.

SEYMOUR LOWMAN,
 *Acting Secretary of the Treasury.*

It is conceded that this telegram should be construed as substituting the language following the word "quote" therein for the language in brackets on page 3 of the Customs Catalog, hereinabove quoted.

The evidence on behalf of appellees respecting promulgation of said telegram is summarized in the opinion of the Appellate Division as follows:

The record shows that Mr. Leonard W. Moritz, a customs broker with 20 years of experience, testified that he made the entries herein and he had never seen the telegram posted on the bulletin boards at the customhouse in New York and was not aware of its terms when the entry was made. Mr. Edward J. Sheridan, another customs broker at New York, having 15 years of experience, testified that he visited the customhouse every day and he usually observed what was posted on the bulletin boards therein and he had not seen a copy of the telegram and no one in the customhouse had ever drawn his attention to it. Mr. David W. Benedict, the chief entry clerk at the customhouse testified that notations on the original telegram (exhibit 8) indicate that a copy had been sent to the appraiser and to the surveyor and that a copy was circulated among the entry clerks but he did not know if it was ever posted on the bulletin boards but it was at the entry desk and was open to inspection by anyone upon request. Mr. P. Martin Ollinger, who has been employed by a firm of customs attorneys for 26 years testified that with the exception of the period between July 1, 1936, and January 1, 1938, he visited the customhouse every day and examined records therein and had never seen the telegram posted on the bulletin boards and that on December 1, 1939, he examined the bulletin boards for the special purpose of ascertaining if the telegram was posted thereon. Mr. William P. Zwinge, a former deputy collector in charge of the entry division of the customhouse, testified that he saw a copy of the telegram when it arrived and probably sent copies thereof to the entry clerks but no copies were made for the importers or customs brokers and he did not think that copies were circulated among importers or given to customs

brokers. The record shows also that counsel for the plaintiff below wrote a letter to the Commissioner of Customs on October 31, 1939, asking whether Customs catalog 3418 and the telegram of June 25, 1932, were ever published as a Treasury decision or promulgated as a special regulation and received a reply declining to answer the question on the ground that it was a justiciable issue pending before the court.

The parties stipulated in open court that neither Customs catalog 3418 nor the telegram of June 25, 1932, had ever been published in the TREASURY DECISIONS.

Supplementing the above-quoted summary of the testimony in behalf of appellees, we would observe that the witness, Sheridan, testified, in part, as follows:

Q. Are entries passed or submitted in what is called the Entry Division of the Customhouse?—A. That is right.

Q. And that is on the second floor; is that right?—A. Yes, sir.

Q. Is there a bulletin board there?—A. Yes.

Q. Do you look at the bulletin board?—A. Yes.

Q. How often?—A. It is right in front of my box, and anything new on it, I usually observe.

Q. Is it customary to post announcements and notices on that bulletin board, which would be of interest to Customhouse brokers in connection with the passing of entries?—A. Yes.

Q. And is there any other bulletin board in the Customhouse?—A. There is a bulletin board in the front of the building.

Q. Same floor?—A. Yes.

Q. Do you look at that?—A. Occasionally.

Q. Is it customary to post announcements there which are of general interest to Customhouse brokers?—A. No, sir.

Q. Mr. Sheridan, as part of your duties for your company, do you keep posted as to matters which concern the making and passing of entries?—A. I do.

Q. I ask you to look at Exhibit 1, and state whether anybody in the Customhouse ever called your attention, officially, to that telegram, or a copy of it?—A. No, sir.

Q. Did you ever see that telegram posted on the bulletin board in the Entry Division?—A. No, sir.

Q. Did you ever see that telegram posted anywhere in the Customhouse?—A. No, sir.

Q. Did any collector, or deputy collector, or assistant collector, or any other Customs official, ever advise you about that telegram, or that it existed?—A. No, sir.

The witness, Benedict, the chief entry clerk at the customhouse, also testified, in part, as follows:

X Q. * * * Was there, to your knowledge, at any time during 1936, any special copy, any particular copy of this order book, Customs Catalogue 3418, set aside anywhere for public inspection?—A. When Mr. Brewer came in as deputy of the division on August 27, 1934, he went over the ground and raised that question; if there was an order book to which the public or the brokers have access, and he went so far as to order that at least one book be set aside, or put in a place, with a hole put through it, and a chain on it, and put on what is known as the Amendment Entry Clerk's desk. It is a desk like this, and there are openings where the broker comes up to that window and transacts his business. There

was a copy put there, and also on the desk behind my desk, where the Treasury Decisions are, and anyone looking at Treasury Decisions comes in and has access to them.

X Q. Now, this copy that is on a desk behind your desk, is it still there?—A. It was when I left this morning.

X Q. Continuously?—A. Yes.

X Q. Does that copy contain the telegram we are discussing?—A. Yes.

This witness further testified that from February 1, 1935, until July 31, 1936, one McCort was "Executive Entry Clerk" in the customhouse; that the witness was familiar with McCort's handwriting; that he, McCort, had a copy of said Customs Catalog, and that on the back cover, written in pen and ink in McCort's handwriting, is a copy of said telegram, Exhibit 1; and that said book containing said telegram has been used by an entry clerk ever since that time.

This copy of the catalog was introduced in evidence as "Defendant's Exhibit 10." An inspection of this book shows that the body of said telegram is written in on the inside of the back cover, but there is no signature attached, nor is there anything to indicate the source of the telegram. On this back inside cover there is also other writing evidently intended for the information of the customhouse employee using the book.

The evidence on behalf of appellant consisted of certain copies of the New York Journal of Commerce, one of the issue of June 29, 1932, and the other of July 1, 1942, each of which contained a news item under the caption "Customs Rulings and Notes," explaining the terms and effect of said telegram, Exhibit 1.

It is our opinion that appellees made a *prima facie* case overcoming the presumption that said Catalog 3418, as amended, was promulgated, and the appellant introduced no evidence sufficient to overcome said *prima facie* case made by appellees.

While appellant contends that the publication of the aforesaid news items in the New York Journal of Commerce is evidence that said telegram, Exhibit 1, was released for publication, we cannot so hold. He would have a most credulous mind, indeed, who would regard mere news stories written by newspaper reporters regarding Government activities, as being written with the authority of those having charge of such activities, even though such stories may prove to be substantially accurate.

While the burden was upon appellees to overcome the presumption that the so-called special regulation was promulgated, when that had been done it would seem that if it ever had been promulgated, appellant could have produced proof of that fact, and would not have relied upon news items in a newspaper to support its claim of promulgation.

As for appellant's claim that the writing of the telegram, Exhibit 1, on the back cover of Catalog 3418 constituted a promulgation of the

special regulation as amended, we are of the opinion that there is no substantial evidence that this was either intended or served to make known to all interested parties that said Catalog 3418 had been amended.

Furthermore, it is a fair deduction from all the evidence that said telegram, exhibit 1, was distributed merely for the information of the customs employees, and that it was not intended by any Government official that the same should be brought to the attention of importers in any of the ways that legal and proper promulgation could have been made.

While the Government in its brief contends for a very broad definition of the word "promulgate," in the case of *United States* v. *C. J. Tower & Sons (J. A. Forrest, Anderson Grain & Feed Co.)* 24 C. C. P. A. (Customs) 304, T. D. 48754, we held that "regulations made pursuant to a tariff act should be promulgated in such manner as to give notice to interested parties."

It would seem that if promulgation of Exhibit 1 had been intended, it would have been published in the official TREASURY DECISIONS, for it was a matter of very great importance, affecting nearly all imports coming into the largest importing center in the United States. In any event, said telegram could have been conspicuously posted in the customhouse for the information of importers. The Government's contention that this would not have been practicable is without merit.

The Government's brief states:

Obviously, no one reading the telegram could intelligently comprehend its meaning unless it was accompanied by a copy of Customs Catalog 3418, so that reference could be made to the general rule on page three thereof which was being altered.

We cannot agree with this statement. If Customs Catalog 3418 was a public document, as the Government contends and concerning which no question is here made, then the posting of the telegram, Exhibit 1, in a conspicuous place in the customhouse would have readily informed importers that said catalog had not only been amended, but they would also be informed of the precise words of the amendment.

The Government officials charged with the administration of the customs laws were, long previous to these importations, advised of the necessity of the promulgation of customs regulations. *Gallagher & Ascher* v. *United States*, 14 Ct. Cust. Appls. 38, T. D. 41548.

The facts in the case at bar are very similar to those in the case of *United States* v. *Japan Import Co., Inc.*, 28 C. C. P. A. (Customs) 71, C. A. D. 127, in which there was involved a special regulation in the form of a letter of the Acting Secretary of the Treasury, addressed to the Collector of Customs, San Francisco, Calif. Only three copies of the letter were made, one for the appraiser and two for the deputy

collector, and neither the original nor copies thereof were posted on the bulletin board in the customhouse. There was no other effort to promulgate or make known the contents of the letter. We concluded our opinion in that case with the following statement:

It is our conclusion that since the so-called special regulation was never promulgated, it amounted to nothing more than a private instruction to the collector, and was not a special regulation such as the statute contemplated, and one which would relieve the appraiser from carrying out the express mandate of the statute which requires that 1 of every 10 packages be examined.

In the case at bar, after carefully reviewing the evidence, we are of the opinion that there is substantial evidence that Customs Catalog 3418 as amended by the telegram, Exhibit 1, was not duly promulgated at the time that the involved importations were made. As it is conceded that if said promulgation was not had the involved appraisements are void the judgment appealed from is *affirmed*.