UNITED STATES *v.* CANADA PACKERS, LTD.

No. 4417.—Entered at Buffalo, N. Y., June 16, July 11, 1934. Entry Nos. B–3438, B–89.

First Division, Appellate Term

(Decided October 19, 1938)

*Webster J. Oliver*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.
*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the appellee.

Before McClelland, Sullivan, and Brown, Judges; McClelland, Presiding Judge, concurring

Sullivan, Judge: The merchandise involved in these reappraisements consists of steer hides shipped from Canada. In reappraisement 108173–A the merchandise was entered on June 16, 1934. In

108374–A it was entered July 11, 1934. The merchandise was invoiced at the purchase price, and entered the same, or at somewhat less by reason of an allowance for what is called "grub" and consular invoice. It was appraised somewhat higher than the entered value, although allowances were made for "grub", and what are termed "kosher" hides.

Considerable testimony was taken at Buffalo. At the outset these two cases were tried separately, and considerable testimony was taken at Buffalo as to each case before Judge Cline in 1935. At the hearing in Buffalo on January 13, 1936, before Judge Dallinger, these two cases were consolidated. The testimony in each case as to value is similar.

Judge Cline sustained the appraised value. Afterwards she granted a rehearing in each of these cases, and they were ultimately heard by Judge Dallinger.

At the hearing before Judge Dallinger it was claimed by the plaintiff, the importer, that the appraisements were null and void on the ground that the collector had not designated a sufficient number of packages for examination and appraisement as provided in section 499 of the Tariff Act of 1930.

Section 499 provides in substance—

Imported merchandise, required * * * to be inspected, examined, or appraised, shall not be delivered from customs custody, except as otherwise provided in this Act, until it has been inspected, examined, or appraised * * *. The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, * * * is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by special regulation permit a less number of packages to be examined * * *.

This presents the question involved in these appeals.

Judge Dallinger heard the causes and found that the appraisements were null and void *ab initio* as the collector did not comply with the law by designating the proper number of packages for opening and examination as provided in section 499.

As previously stated, Judge Cline heard the causes, and received considerable testimony as to the market value of the merchandise in Canada on or about the dates of shipment.

It appeared a so-called special regulation, being a letter from the Secretary of the Treasury addressed to the collector of customs at Buffalo, N. Y., dated August 6, 1932, was involved. This letter empowered the collector to examine a less number of packages

than 10 per centum of cattle hides, "but in no case shall less than 1 per centum of every invoice of such articles be examined, except upon special instructions from the Secretary of the Treasury."

When these causes came before Judge Dallinger there was but one question raised.

In reappraisement 108173–A we find from the record the following (p. 3, minutes of January 13, 1936):

Mr. OLIVER. If Your Honor please, if I understand the situation correctly, I do not know whether Mr. Tompkins has made it entirely clear: It is my understanding the motion for rehearing is limited entirely to this question of the motion to dismiss for failure to secure samples for sufficient examination.

That question is the only one upon which the court below passed.

The court sustained the contention of the appellee that compliance was not had with section 499, that the appraisements in these causes were null and void *ab initio*. It is from this judgment an appeal was taken to division for a review of such finding.

While the causes differ from each other in the quantity of steer hides involved, the issue in each instance is the same.

In a brief filed by the Government on January 5, 1938, it was stated:

The sole issue is whether or not a letter dated August 6, 1938, addressed to the Collector of Customs, Buffalo, New York, and signed Seymour Lowman, Acting Secretary of the Treasury, constitutes a special regulation under the provisions of section 499 of the Tariff Act of 1930.

The foregoing is quoted from a brief filed in reappraisement 108374–A, before Judge Dallinger.

When the cause was called for hearing before the division the Government stated:

Mr. AUSTER. This case is almost identical with the other (reappraisement 108173–A). The same merchandise was involved. This case covers May hides. The previous case covered April hides.

It was further stated by the Government in oral argument that 1,504 packages were involved in reappraisement 108374–A and 16 were designated, or one per centum.

It will be observed that the facts disclosed that each hide was wrapped separately, and in fact constituted a package.

In reappraisement 108173–A there were 828 hides imported of three different kinds, and ten hides were designated. The hides were wrapped and tied separately, that is, each hide constituted a single package.

In each reappraisement, if each hide is to be considered a package, section 499 was not complied with, in that ten per centum of the packages were not designated for examination.

It is contended by the Government in each of these cases that there was an examination by the appraiser, notwithstanding the number

designated by the collector, of all the packages in the following manner: Not a single package was opened, as we gather from the testimony, but the examiner or appraiser went into the car in which the hides were located, stood upon the hides and looked at them. It is contended that this is an appraisement of the entire lot, otherwise an appraisement in bulk; and that the merchandise should be considered as a shipment in bulk, and not of individual packages.

With these facts before it, the lower court, in an extended opinion in each case, wherein the facts were discussed and the authorities cited, did not dismiss the appeals, but held the appraisement void *ab initio*, and did not enter into the question of value.

It is unnecessary for this court to recite the authorities cited by the lower court in its opinion, if it finds the facts sustain the judgment. We are satisfied it does. We are satisfied that 10 per centum of the packages of this merchandise were not designated by the collector for examination. We believe the record is ample to establish that each of these hides constituted a package and they were shipped as such and that 10 per centum of such packages were required to be designated for examination by the collector. A mere walking over the hides, or looking at the bulk, was not examining them, and was not a compliance with the statute. Therefore there could not be a valid appraisement.

In addition, the appraiser did not have the authority to designate the number of packages to be examined. The law provided that was the duty of the collector, and such statutory requirements could not be waived by the appraiser. The collector designates the number of packages to be examined; it is the duty of the appraiser to examine the number designated. Merely to state—"I looked over these 828 or 1,504 hides, and they all looked alike" is not a compliance with the statute as to the examination of a designated number. The authorities are ample along that line.

A serious question involved in this case is whether or not Exhibit 6 is a valid special regulation. Exhibit 6 is as follows:

TREASURY DEPARTMENT,
OFFICE OF THE SECRETARY,
*Washington, August 6, 1932.*

The COLLECTOR OF CUSTOMS,
*Buffalo, New York.*
SIR:

Reference is made to the Department's letters of September 4 and October 29, 1935 (102057), relative to the designation of packages for examination at your port under Section 499 of the Tariff Act.

I am of the opinion that the examination of less than one package of every ten packages of each importation of the articles hereafter enumerated will amply protect the revenue.

You are, therefore, hereby authorized to examine a less number of packages than 10 per cent of importations of the following articles, but in no case shall

less than 1 per cent of every invoice of such articles be examined, except upon special instructions from the Secretary of the Treasury:

\* \* \* \* \* \* \*

Cattle

\* \* \* \* \* \* \*

Hides

\* \* \* \* \* \* \*

Respectfully,

(S) Seymour Lowman,
*Acting Secretary of the Treasury.*

It must be conceded a regulation must be promulgated.

It is contended that it devolved upon the plaintiff to establish that this letter was not promulgated; that is, given to the public.

It is very questionable whether the burden rested upon the plaintiff.

In the dissenting opinion of Judge Garrett in *United States* v. *Tower*, 24 C. C. P. A. 304, T. D. 48754 (p. 310), is an excellent elucidation of the law on the subject of burden of proof in cases relative to a proper promulgation of a rule or regulation of the Treasury Department. The Government has charge of these regulations, creates them, and is required by law to publish them for the benefit of the public. The Government knows whether or not a regulation has been published. It seems to us to require the plaintiff (importer) to prove that which the Government should do, is carrying the rule as to burden of proof a long way. However, in the *Tower* case, *supra*, the majority of the court held that the duty devolved upon the plaintiff. The court did hold that such special regulation as is provided in section 499 should be *promulgated* to be valid, making promulgation a question of fact.

The evidence in the cases at bar establishes, if the burden rested upon the plaintiff, that the regulation was not promulgated. The evidence is clear the plaintiff did not have any knowledge of this regulation, even if such knowledge would bind the plaintiff, which we do not hold. The statute contemplates written promulgation.

The statute was created for a specific purpose, and gave specific authority to the collector to designate the number. For the sake of argument, admit he did not make designation at all and yet the appraiser examined more than 10 per centum, would it be a compliance with section 499? In our judgment it would not, as the duty did not devolve upon the appraiser to designate the number.

In *United States* v. *Boston Paper Board Co.*, 23 C. C. P. A. 372, T. D. 48233, the court went into many of these questions rather fully, where this identical letter was involved, Exhibit 6 in the case at bar. While in that case the court did not say whether the letter was or was not a special regulation, admitting, for the sake of argument, it was a regulation the collector did not comply therewith, not designating the number provided in the letter.

Section 499 of the Tariff Act of 1922, corresponding to section 499 of the present act, was held in *United States* v. *Davis*, 20 C. C. P. A. 305, T. D. 46087, to be mandatory and required the collector to designate the number of packages stated in the section. In that case the court went into the question extensively as to the mandatory character of this section.

In the *Davis* case, *supra*, all the merchandise was designated for examination. The court held it was necessary to examine at least one of every ten packages. In the case at bar, even if the collector designated the entire shipment, the evidence discloses the appraiser did not examine one in every ten of the packages and unless he did so his appraisement is void. The *Davis* case, *supra*, fully sustains this holding.

*Second:* It is contended that the plaintiff (importer) did not comply with sections 481 and 484 of the tariff act in his invoicing of the merchandise, in that he did not number the packages. Each hide being folded and tied constituted a package. It was so invoiced, as so many hides. There was a compliance by the plaintiff (importer) with sections 481 and 484 of the Tariff Act of 1930. This contention of the Government is without merit.

*Third:* Inasmuch as the lower court did not find a value the question presents itself: May this court find a value?

As we read the authorities, and particularly *United States* v. *Woolworth*, 22 C. C. P. A. 184, T. D. 47126, it would appear from a very able opinion by Judge Garrett that appraisements cannot be hung up in the air, and that a value must be found by some court, and particularly by the single judge.

We think the discussion of this may be simplified by first considering the functions which the statute imposes on the single judge sitting in reappraisement as distinguished from the functions of the United States Customs Court, or a division thereof. There is an intimation in the opinion that the court of review may find such value, but in the first instance it ought to be found by the single judge. In order to find a value there should be an appraisement. If it is erroneous or illegal the lower court and probably the court of review can enter a judgment as to value. That is apparently not true where the appraisement is absolutely void *ab initio*, as was found by the court in the present case. In such instance there is not an appraisement at all.

The Court of Customs and Patent Appeals has not held specifically that in such instance either the single judge or the court of review can find a judgment on the facts. In the *Davis* case, *supra*, they rather evaded it. In that case the appraisement was absolutely void. Value was not found by the lower court or by the court of review, and the appellate court in affirming the action of the division did so without holding who, if any one, may find a value.

This cause rests on the same basis.

In the *Woolworth* case, *supra*, the court states (p. 191):

We think that no case, in which appraisement is required and in which the elements are present that enable appraisement, should be left suspended in mid-air to the detriment, if not the complete paralysis, of administration. Accordingly we feel that in cases where the tribunals of the United States Customs Court, when functioning in reappraisement proceedings, find *erroneous* the valuation of the local appraiser, they should themselves find value if the *record warrants such a finding*. Their authority is ample, and, in our opinion, the duty so to do is mandatory. Unless it is done by them it cannot be done. This court is without the power which is theirs, and we know of no other tribunal to which those interested may turn.

Notice the language of the court, "where the tribunals of the United States Customs Court, when functioning in reappraisement proceedings, find erroneous the valuation of the local appraiser." In the case at bar the court did not find it erroneous. It found it void *ab initio*. Therefore there is not an appraisement at all. If there was not any appraisement, does the statute empower either the lower court or the court of review to find a value on the facts? In other words to become an appraising officer when the appraiser's action is void *ab initio*. The question is a serious one, but under the opinions as outlined in the *Davis* and *Woolworth* cases, *supra*, we cannot do more than affirm the judgment of the lower court, which we do.

The judgment of the lower court is affirmed.

BROWN, Judge: I concur in the conclusion.

### CONCURRING OPINION

McCLELLAND, Presiding Judge: With due respect for the conclusion reached by the Court of Customs and Patent Appeals in *United States* v. *C. J. Tower & Sons*, 24 C. C. P. A. 304, T. D. 48754, I nevertheless concur in the conclusion reached by my associate, Judge Sullivan, in this case.

I wrote the opinion of this division in the *Tower* case, *supra*, which was concurred in by Judges Sullivan and Brown. It is observed that our decision was reversed by a divided court, three members thereof having voted for reversal and two in favor of its affirmance. I am still unable to appreciate how a communication such as Exhibit 6, addressed to the collector of customs at the port of Buffalo, can be construed to be a special regulation within the meaning of the statute authorizing the Secretary of the Treasury to make such regulations, especially in view of the language of the last paragraph, which reads:

You are, therefore, hereby *authorized* to examine a less number of packages than 10 per cent of importations of the following articles * * *.

It was my view when I wrote the opinion in the *Tower* case, *supra*, that Exhibit 6 was nothing more than an instruction to one officer

at the paricular port to govern his action in providing for the examination of particular kinds of merchandise, which included hides, and that view is succinctly expressed by Judge Garrett in his dissenting opinion in that case in these words:

* * * I do not think "special", as applied to a regulation authorized by the section, means that it may be special to a port but that it is special to the merchandise.