UNITED STATES *v.* LEONARD W. MORITZ CO. AND LACTA ʿSEPARATOR CO., INC.

**No. 5483.**—Invoices dated Helsingfors, Finland, January 17, February 8, 1936.
Certified January 18, February 8, 1936.
Entered at New York February 7, March 3, 1936.
Entry Nos. 345663, 807889.

### Third Division, Appellate Term

(Decided October 27, 1941)

*Charles D. Lawrence*, Acting Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the appellant.
*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the appellees.

Before CLINE and KEEFE, Judges

CLINE, Judge: This is an application for review of the decision of the trial court in *Leonard W. Moritz Co. and Lacta Separator Co., Inc.*

v. *United States*, Reap. Dec. 5072. Although the appellant assigned numerous errors to the decision below, the only questions raised in the argument before this division were whether or not the appraisement was void, as found by the trial court, and whether the trial court erred in receiving in evidence an affidavit of the president of the importing company, which affidavit was executed in Chicago and was introduced in evidence at the trial in New York. The trial judge admitted the affidavit in evidence and denied a motion by the defendant below to transfer the case to Chicago in order that the affiant might be cross-examined.

The trial court found that less than 10 per centum of the cases in the shipments had been designated by the collector for examination by the appraiser and held that the appraisement was void because the designation did not accord with the provisions of section 499 of the Tariff Act of 1930, reading in part as follows:

SEC. 499. * * * The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by special regulation permit a less number of packages to be examined. * * *

An inspection of the official papers in the record shows that the merchandise under appraisement consists of cream separators exported from Finland, the invoices being certified on January 18, 1936, and February 8, 1936, which is prior to the enactment of the Customs Administrative Act of 1938 wherein the provisions of section 499 of the Tariff Act of 1930 were amended in section 16 of said act. The invoice in reappraisement 117447–A covers 30 cases. There were 10 cases of cream separators No. 27BK, 15 cases of No. 400K and 5 cases of No. 300K. The collector designated 2 cases for examination by the appraiser, namely, No. 2210, covering quality No. 27BK, and No. 2235, covering quality No. 400K. The appraiser noted advances on the invoice on the qualities 400K and 300K, although no case containing quality No. 300K was designated for examination. The entry in reappraisement 117448–A covers 178 cases and the collector designated 8 cases for examination. The only merchandise upon which the appraiser noted an advance was cream separator No. 225K. The invoice shows that there were 50 cases of that quality, numbers 2865/2914, and one case, number 2865, was designated for examination. It is obvious from an examination of the record that the collector failed to designate 10 per centum of the cases for examination in either shipment in accordance with the requirements in section 499 above quoted.

Counsel for the appellant argues that there was a special regulation issued by the Secretary of the Treasury prior to the importations in this case and that such special regulation incorporated all of the merchandise named in Customs catalog 3418 directing that a designation may be made of a smaller number of cases of merchandise named therein than is prescribed in section 499. Three copies of the document which appellant claims is, in connection with Customs catalog 3418, a special regulation, were admitted in evidence and marked exhibits 1, 8, and 9. It consists of a telegram from Seymour Lowman, Acting Secretary of the Treasury, dated June 25, 1932, reading as follows:

COLLECTOR CUSTOMS

NEW YORK NY

GENERAL RULE PAGE THREE CUSTOMS CATALOGUE THIRTY FOUR EIGHTEEN AT HEAD OF LIST OF IMPORTS CHANGED TO READ AS FOLLOWS QUOTE IN THE OPINION OF THE SECRETARY OF THE TREASURY THE EXAMINATION AT THE APPRAISERS STORES ON THE WHARF OR ELSEWHERE OF SAMPLES OR REPRESENTATIVE PACKAGES ALTHOUGH CONSTITUTING A LESS PROPORTION THAN TEN PERCENT OF THE SHIPMENT IS CONSIDERED AMPLY SUFFICIENT TO PROTECT THE REVENUE WHEN MERCHANDISE IS BOUGHT BY SAMPLE OR IS IMPORTED IN PACKAGES OF SAME CONTENTS AND VALUE OR WHEN PURCHASED AT THE SAME PRICE PER UNIT OF WEIGHT GAUGE OR MEASURE BUT IN NO CASE SHALL LESS THAN ONE PERCENT BE EXAMINED EXCEPT UPON SPECIFIC AUTHORITY FROM THE DEPARTMENT UNQUOTE SEYMOUR LOWMAN ACTING SECRETARY OF THE TREASURY

Two copies of Customs catalog 3418 were received in evidence and marked exhibits 2 and 10. This document contains 280 pages of which 276 pages list different kinds of imported merchandise. On page 191 we find the words "Separators, cream, one each invoice, however packed" which appear under the heading "Public Store examination, less than one package in ten." The list of merchandise in which cream separators appear starts on page 3 under the following heading:

### LIST OF IMPORTS

of which

LESS THAN 1 PACKAGE IN 10 MAY BE SENT FOR EXAMINATION TO THE UNITED STATES PUBLIC STORE AT THE PORT OF NEW YORK,

When packed in bottles, jars, tins, cases, or tin-lined barrels.

(One representative package to be sent to public store when merchandise is imported in packages of same contents and value, or when purchased at the same price per unit of weight, gauge, or measure. Department letters, August 10 and 24, 1904, and May 12, 1914)

The appellant contends that the purport of the telegram of the Acting Secretary of the Treasury indicates that it was the intention to insert in lieu of the statement in parenthesis in the above quotation from Customs catalog 3418 the portion of the telegram after the word

"quote" and that the whole document as amended is a special regulation exempting the articles named therein from the mandatory provisions in section 499. The appellant cites *United States* v. *Daniel F. Young, Inc.* 27 C. C. P. A. (Customs) 124, C. A. D. 73, and argues that the same telegram and Customs catalog 3418 were held to be a special regulation of the Secretary of the Treasury in that case and that the appraisement made by the appraiser in that case was not void because the collector did not designate 10 per centum of the cases for examination. The merchandise in that case consisted of electric-light bulbs listed on page 71 of Customs catalog 3418.

Counsel for the appellees contend that the evidence in this case establishes that the telegram (exhibits 1, 8, and 9) and Customs catalog 3418 were not promulgated within the meaning of that term and therefore they are not effective in making legal a designation by the collector of less than 10 per centum of the shipments for examination and appraisement. Appellees argue that the decision in *United States* v. *Daniel F. Young, Inc., supra,* was based on the assumption that the telegram in that case was promulgated, in the absence of evidence to the contrary, and that the decision does not go so far as to hold that a document which is not duly promulgated constitutes a special regulation. Appellees contend that the instant case is thus distinguished because here the evidence shows that the telegram was not promulgated while in the case cited there was no evidence in the record to overcome the presumption that it was promulgated. The portion of the decision which forms the basis of appellees' argument reads as follows:

We are of opinion, therefore, that Customs Catalog 3418, as amended, is a valid special regulation by the Secretary of the Treasury, *assuming, as we must, there being no evidence to the contrary, that it was duly promulgated.* [Italics ours.] *United States* v. *C. J. Tower & Sons,* 24 C. C. P. A. (Customs) 304, T. D. 48754.

In *United States* v. *Gilson Bros.,* 20 C. C. P. A. (Customs) 117, T. D. 45753, the appellant contended that the burden rested on the importer to prove an absence of a special regulation in a case involving the sufficiency of a designation of cases for examination where the validity of an appraisement was attached. The document over which the controversy arose in that case was Customs catalog 3418. The court said:

If a special regulation, such as contemplated by said section 499, was in existence at the time of the importations here in question, we may take judicial notice of it, and it was therefore not necessary for the appellees to offer proof that no such special regulation was in force. Therefore, there could be no such burden upon the appellees as the appellant contends for.

In *United States* v. *C. J. Tower & Sons et al.,* 24 C. C. P. A. (Customs) 304, T. D. 48754, which case involved the legality of an appraisement, the Government produced a letter from the Secretary of the

Treasury to the collector authorizing him to examine less than 10 per centum of the shipments of bran, shorts and other mentioned goods, which letter was not published in the TREASURY DECISIONS, the court assumed that it was duly promulgated and said that the burden was on the importers to prove an absence of promulgation. The court said:

> We must assume that if the same had not been properly promulgated, this fact could have been shown. We must, therefore, presume for the purposes of this decision that the same was properly promulgated. It would have been an easy matter for the importers who attacked the validity of the appraisement to have called the collector at the port of Buffalo, or others, to the witness stand and there elicited proof of the true facts relating to the promulgation or lack of promulgation of said exhibit 2.

The appellees in the instant case assumed the burden in the court below of establishing that the documents claimed by the Government to be special regulations were not duly promulgated and proved that neither was published in the TREASURY DECISIONS, posted on the bulletin boards in the customhouse, or circulated among importers and customs brokers.

The trial court found as a fact that the telegram (exhibits 1, 8, and 9) had not been duly promulgated. The testimony upon which this finding is based is carefully reviewed in the decision below. The record shows that Mr. Leonard W. Moritz, a customs broker with 20 years of experience, testified that he made the entries herein and he had never seen the telegram posted on the bulletin boards at the customhouse in New York and was not aware of its terms when the entry was made. Mr. Edward J. Sheridan, another customs broker at New York, having 15 years of experience, testified that he visited the customhouse every day and he usually observed what was posted on the bulletin boards therein and he had not seen a copy of the telegram and no one in the customhouse had ever drawn his attention to it. Mr. David W. Benedict, the chief entry clerk at the customhouse testified that notations on the original telegram (exhibit 8) indicate that a copy had been sent to the appraiser and to the surveyor and that a copy was circulated among the entry clerks but he did not know if it was ever posted on the bulletin boards but it was at the entry desk and was open to inspection by anyone upon request. Mr. P. Martin Ollinger, who has been employed by a firm of customs attorneys for 26 years testified that with the exception of the period between July 1, 1936, and January 1, 1938, he visited the customhouse every day and examined records therein and had never seen the telegram posted on the bulletin boards and that on December 1, 1939, he examined the bulletin boards for the special purpose of ascertaining if the telegram was posted thereon. Mr. William P. Zwinge, a former deputy collector in charge of the entry division of the customhouse, testified that he saw a copy of the telegram when it arrived and prob-

ably sent copies thereof to the entry clerks but no copies were made for the importers or customs brokers and he did not think that copies were circulated among importers or given to customs brokers. The record shows also that counsel for the plaintiff below wrote a letter to the Commissioner of Customs on October 31, 1939, asking whether Customs catalog 3418 and the telegram of June 25, 1932, were ever published as a Treasury decision or promulgated as a special regulation and received a reply declining to answer the question on the ground that it was a justiciable issue pending before the court.

The parties stipulated in open court that neither Customs catalog 3418 nor the telegram of June 25, 1932, had ever been published in the TREASURY DECISIONS.

The defendant below called Mr. Francis T. Hickey, an associate attorney in the law division at the customhouse, who testified that he searched the publication known as the Journal of Commerce, a daily newspaper, at dates near June 25, 1932, to ascertain if the information in the telegram (exhibits 1, 8, and 9) was published and found a reference thereto in the issues of June 29, 1932, and July 1, 1932. A photostatic copy of a page from each issue, containing the information referred to, was admitted in evidence and marked exhibit 13. The articles referred to mention a new order issued by the Acting Secretary of the Treasury but do not quote the order or explain its details. The two articles are quoted in the decision below. They appear to be nothing more than news items. It is manifest that the publication of the two articles in the Journal of Commerce cannot be construed as legal notice of the Secretary's ruling.

The appellant, in its brief, quotes the definition of the word "promulgate" found in Webster's New International Dictionary, Bouvier's Law Dictionary, Black's Law Dictionary and Blackstone's Commentaries. Those definitions show a distinction between "promulgation" and "publication" but they do not conflict with the following excerpt from the decision in *Gallagher & Ascher* v. *United States*, 14 Ct. Cust. Appls. 38, 41, T. D. 41548:

A regulation may be promulgated without being printed in the TREASURY DECISIONS, and in the same sense it may be published without being displayed in any recognized publication. To promulgate means to make known. *Wooden* v. *Western New York & P. R. Co.*, 18 N. Y. Supp. 768.

The appellant cites T. D. 39819, 44 Treas. Dec. 171, for the purpose of showing that Customs catalog 3418 is a Treasury Department publication. An examination of that reference shows merely that "Form 3418" described as a "list of imports, etc." is mentioned on page 176 as an addition to the catalog of books and blanks. It comes under the heading of "List of Amended Forms" and there is nothing therein contained to indicate that it has the characteristics of a special regulation. In fact, in *United States* v. *Gilson Bros.*, *supra*, it was held not to be a special regulation. We note that in T. D. 48807, 71

Treas. Dec. 224, and also in T. D. 48923, 71 Treas. Dec. 645, the Secretary of the Treasury promulgated instructions for examination of less than 1 package in 10 of certain merchandise and those instructions have the words "Special Regulation" in the heading. Some of the articles named therein are listed in Customs catalog 3418, exhibits 2 and 10. Those citations bear evidence of being special regulations but there is nothing in exhibits 1, 8, and 9 or exhibits 2 and 10 which indicates that they were intended to be special regulations.

In the case of *United States* v. *Japan Import Co., Inc.*, 28 C. C. P. A. 71, C. A. D. 127, the importers proved, as they did in this case, that the document directed to the collector of customs was not brought to the attention of the importers or customs brokers but was circulated among the customs officers interested in such procedure. In describing this testimony the court said:

> The record shows that the Secretary of the Treasury, through his acting assistant, in 1932 addressed a letter to the Collector of Customs at San Francisco in which he informed the collector at that port that as to certain articles, including boots and shoes, except Chinese, the revenues would be protected if less than 1 package out of every 10 were examined, and that he was authorized to examine less than 10 per centum of the importations but not less than 1 per centum of each invoice except upon special instructions from the Secretary of the Treasury; that three copies of the letter when received were made, one for the appraiser and two for the deputy collector in charge of the entry and warehouse division; and that there was no other effort to further promulgate or make known the contents of the letter. The sole witness in the case, when definitely asked in what way the contents of the letter was brought to the attention of the importing public, stated that copies were made as above stated. If more had been done it is fair to assume that the witness would have at that time so stated. After he had answered the question he stated: "I will have to look at the exhibit to see if a copy was given otherwise"; that is, otherwise than to the appraiser and the deputy collector. He then stated, presumably after having looked at the exhibit to get such information as it afforded, that "There were two given to the man in charge of the entry division and one to the appraiser of merchandise." He stated that there was a bulletin board in the customhouse upon which notices of interest to importers were fastened from time to time (article 818 (i) of the Customs Regulations of 1937 requires the posting of certain bulletins in conspicuous places in customhouses for the information of importers), but that they were not in the habit of putting communications like the controverted letter on that board in view of the fact that "we did consider that the deputy collector in charge of the entry division would call it to the attention of the brokers who represented the importers, and they would have that knowledge."

In that case the court below found that the letter which the Government claimed was a special regulation had not been duly promulgated and the appellate court held that the evidence sustained that finding. The court said:

> We think that the Appellate Division of the Customs Court arrived at the right conclusion on the evidence produced and that such evidence fairly shows that the purported special regulation was merely a departmental communication by the proper authorities in Washington to the collector of customs at San Francisco, and that it was not intended to require that the same should be brought

to the attention of importersi n any of the ways that legal and proper promulgation could have been made. * * *

It is our conclusion that since the so-called special regulation was never promulgated, it amounted to nothing more than a private instruction to the collector, and was not a special regulation such as the statute contemplated, and one which would relieve the appraiser from carrying out the express mandate of the statute which requires that 1 of every 10 packages be examined.

The distinction between regulations and directions disclosed in *Landram* v. *United States*, 16 Ct. Cls. 74 has been referred to in some opinions of our appellate court and the case has been cited as an authority in its decisions. *American Sugar Refining Co.* v. *United States*, 1 Ct. Cust. Appls. 228, T. D. 31273; *Gallagher & Ascher* v. *United States*, 14 Ct. Cust. Appls. 38, 41, T. D. 41548. In *American Sugar Refining Co.* v. *United States, supra,* the record showed that there were general regulations issued with respect to the examination and classification of sugar but the Secretary of the Treasury wrote a letter to the collector in regard to the examination of the sugar in the shipments therein involved. The court said:

We cannot escape the conclusion that these regulations in name [referring to the general regulations] are regulations in fact and not merely instructions or orders.

It was held by the Court of Claims in the case of *Landram* v. *United States* (16 C. Cls. Rpts., 74, 86) that—

A distinction between "instructions" and "regulation" is inherent in the nature of the two things and that an instruction is a direction to govern the conduct of a particular officer to whom it is addressed and that a regulation affects a class of officers.

Applying that definition here, it seems that the regulations of the Secretary of the Treasury in question are clearly general regulations in that they affect classes of persons—namely, importers of sugars and officers whose duty it is to classify the same—and that they also affect a class of importations—namely, sugars.

* * * * * * *

We think, on the whole, that these regulations for the classification of sugars, which, as we have already seen, have been adjudicated as a proper exercise of the authority of the Treasury, are general regulations having the force of law, and must govern the classification of the sugars involved in this case, and that it was not competent for the Secretary of the Treasury to vary the same, as was attempted by the special directions contained in the letter of November 3, 1898.

Under this authority, the telegram in this case (exhibits 1, 8, and 9) would seem to be in the nature of an instruction rather than a regulation. At any rate, in the absence of due promulgation, the document would have no force as a special regulation.

In *Gallagher & Ascher* v. *United States, supra,* the letter which the court held to be a regulation, although not published in the TREASURY DECISIONS but which the court assumed was duly promulgated, in the absence of evidence to the contrary, was addressed "To Collectors of Customs and Others Concerned:" and was headed by the words "Regulations Governing the Entry and Withdrawal of Wool." The exhibits in this case which the appellant claims are special regulations

are addressed to one collector or applicable to one port only and do not bear evidence of being intended as regulations.

The situation in this case is similar to that in *Canada Packers Ltd.* v. *United States*, 73 Treas. Dec. 1445, Reap. Dec. 4256, affirmed in *United States* v. *Canada Packers, Ltd.*, 1 Cust. Ct. 673, Reap. Dec. 4417, wherein a letter of the Secretary of the Treasury, dated August 6, 1932 was held not to be a special regulation because it was circulated among certain customs officers only and was not made known to the importers. It is shown in the decision of the trial judge that the letter was the identical document which the appellate court held in *United States* v. *C. J. Tower & Sons, supra,* to be a special regulation on the assumption, in the absence of evidence to the contrary, that it was duly promulgated. No appeal from the decision in *United States* v. *Canada Packers, Ltd., supra,* appears to have been filed in the appellate court.

We agree with the finding of the trial court in this case that the documents herein involved were not duly promulgated, as was found with respect to the comparable document involved in *United States* v. *Japan Import Co., Inc., supra,* and we so find, and, on the authority of the decision in that case, we hold that the documents in this case (exhibits 1, 2, 8, 9, and 10) are not special regulations and that the appraisements are void due to improper designation and examination of merchandise as provided in section 499.

An affidavit and four customs agents' reports, relating to the value of cream separators, were admitted in evidence and marked exhibits 3, 4, 5, 6, and 7. We have examined the same but, in the view we take of these cases, we deem it unnecessary to review the exhibits in this decision.

There remains to consider the claim of appellant that the trial court erred in refusing to transfer the cases to Chicago, over objection of counsel for the importers, in order that the affiant in exhibit 12 might be summoned and cross-examined by Government counsel. We are of opinion that the transfer of a case to another port is purely discretionary. *United States* v. *Enrique Vidal Sanchez*, 15 Ct. Cust. Appls. 443, T. D. 42642; *Union Fork & Hoe Co.* v. *United States*, 24 C. C. P. A. (Customs) 199, T. D. 48656. It was held in the decisions cited that not only was the question of transfer to another port discretionary but, under the rules of the United States Customs Court, a motion for a transfer of a case to another port should be made before the presiding judge of the court. We find no error in the ruling of the trial judge in this case denying the motion to transfer the cases to Chicago.

The judgment below is affirmed. Judgment will be rendered accordingly.